

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00310-CR

---

EX PARTE SILVIO ALBERTO
CHAVEZ

----------

FROM COUNTY CRIMINAL COURT NO. 5 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

After the trial court granted Appellant Silvio Alberto Chavez's motion for mistrial, Chavez filed an application for writ of habeas corpus alleging that further prosecution was barred by double jeopardy. Specifically, Chavez argued that the prosecutor engaged in conduct that was intended to provoke him into moving for a mistrial. The trial court granted the writ, held a hearing, and denied Chavez's

---

[1]See Tex. R. App. P. 47.4.

application.  Chavez now appeals the trial court's denial of his application.  We will affirm.

## II. BACKGROUND

By information, the State charged Chavez with assault causing bodily injury to a member of his family or household.  *See* Tex. Penal Code Ann. § 22.01(a) (West Supp. 2013).  Chavez pleaded not guilty and elected to have his case tried before a jury.  As the prosecutor questioned the complainant at trial, the following colloquy took place:

> [Prosecutor]:  Okay.  When did you or under what circumstances did you move out of your parent's house and get somewhere on your own?
>
> [Complainant]: In September of that year, I believe it was May of 2009, when he moved into my mom's house, and in September we moved out because that was one of the first times that he --
>
> [Prosecutor]:  Wait a second.
>
> [Complainant]:  Do I continue?
>
> THE COURT:  No.  We're gonna take a break.  If the jury will go to the jury room while we do something outside your presence.  State may take their witness into the hall and talk to her.

After removing the jury, the trial court instructed the prosecutor to explain to the complainant that she could not discuss extraneous acts.  At that point, the record reflects a pause in the proceedings.

After the trial court brought the jury back in, and still during the State's direct examination of the complainant, the following exchange occurred:

> [Prosecutor]:  Why did you look away?

2

[Complainant]: Because I never understood with him, sometimes if I looked at him or I dared look him in the eye I would get slapped for looking at him in the eye.

[Defense Counsel]:   Objection, Your Honor.

THE COURT:  I know y'all had a break[,] but we did not have a break.  I'm gonna send you to the jury room . . .

Outside the presence of the jury, defense counsel objected and requested that the record reflect that "the witness was admonished in the open courtroom by the State not to make any reference or allude to any extraneous offenses and [the complainant] stated she understood."  Defense counsel also moved for a mistrial.  Without ruling on the motion, the trial court admonished the witness by stating, "You understand what we're asking of you? Just be very careful."  The complainant acknowledged that she understood, and the jury was again seated.

Again, during the State's direct questioning, the following exchange occurred:

[Prosecutor]:   What happened after that?

[Complainant]: He got really angry then.  I said, even if I don't call them, they'll call them.  Luis will call them.  I said, I'm not the only adult here besides yourself now.  By then some pushing and I remember him grabbing my arms, you know, shaking me, stuff like that.  He grabbed me again by my hair.  And I remember the seat was back here at that time.  I grabbed whatever I could -- I felt, and I told him, I said, I'm tired of you hitting me.  And if you keep on I'm gonna defend myself because I'm tired of it.  And then they'll call 911 and then you'll go to jail.  And I'm not going to get you out of it this time.

3

Acknowledging that the complainant had "been instructed not to go into extraneous offenses," defense counsel again objected and, again outside the presence of the jury, moved for a mistrial. The trial court denied the request, and the trial continued.

During defense counsel's cross-examination of the complainant, the following exchange occurred:

> [Defense Counsel]: Did you think he was cheating on you that night?
>
> [Complainant]: No.
>
> [Defense Counsel]: You didn't think he was cheating on you?
>
> [Complainant]: If I answer your question in the form that I want then I would go back to other instances and I can't do that. I wouldn't know how to answer the question.
>
> [Defense Counsel]: Your Honor, we object.

The trial court removed the jury, and defense counsel again moved for a mistrial. Despite the prosecutor's argument that the complainant's answers were vague and that "[o]ther instances could be instances of anything," the trial court granted defense counsel's motion for mistrial.

At the writ hearing, Chavez called the same prosecutor to the stand. The prosecutor testified that she had interviewed the complainant on multiple occasions and had explained to her that she would not be able to "talk about [extraneous acts] during the course of the trial." The prosecutor also detailed how after the complainant's first alleged reference to extraneous acts occurred,

4

the complainant was admonished in court in front of the trial judge and defense attorney. The prosecutor averred that she had "talked to [the complainant] during the course of the trial several times about not [talking] about any other extraneous offenses." The prosecutor also testified that she did not engage in conduct intending to provoke Chavez into moving for a mistrial. The prosecutor testified that she even attempted to use leading questions "aimed at navigating around those extraneous offenses."

After denying Chavez's application for writ of habeas corpus, the trial court entered findings of fact and conclusions of law. The trial court specifically found that the trial court itself had "prophylactically halted" the complainant's testimony during the first instance where the complainant "potentially referenced an extraneous act." The trial court further found that the second instance of the complainant's referencing extraneous acts was a "surprise [to] all parties, coming without warning." The trial court found that after the third instance, defense counsel noted that the complainant had been instructed not to reference extraneous acts in his objection. And the trial court found that the fourth instance in which the complainant referenced extraneous acts was in response to defense counsel's questioning. Ultimately, the trial court found that "[n]one of the extraneous offense references were caused in any way by the prosecutor" and that the prosecutor "did not intentionally try to provoke a mistrial but [ ] did the opposite, posing questions that she believed would navigate around any extraneous references." This appeal followed.

### III. DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S. Ct. 1075, 1079 (1976). A defense-requested mistrial is jeopardy-barred only when the prosecutorial "conduct giving rise to the successful motion for a mistrial was intended to provoke [or goad] the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676, 679, 687 n.21, 102 S. Ct. 2083, 2089, 2091, 2095 (1982); *Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) (adopting *Oregon v. Kennedy* standard).

An applicant seeking habeas corpus relief must prove his claim by a preponderance of the evidence. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052 (2006). In reviewing a trial court's decision on an application for writ of habeas corpus, we review the facts in the light most favorable to the trial court's ruling, and we will uphold the ruling absent an abuse of discretion. *Id.*

Here, viewing the evidence in the light most favorable to the verdict, defense counsel acknowledged during trial that both the trial court and the prosecutor had admonished the complainant in open court not to reference extraneous acts. As to the first three references, the evidence supports the trial court's finding that the prosecutor did not pose questions to the complainant designed to invoke the complainant into testifying about extraneous acts. As to the fourth instance, the record supports that the complainant was responding to

6

defense counsel's questioning. Further, even as the trial court declared the mistrial, the prosecutor attempted to persuade the trial court that a mistrial was improper. And most importantly, the trial court's finding that the prosecutor did not intentionally provoke Chavez into moving for a mistrial is supported by the record. We hold that the trial court did not abuse its discretion by denying Chavez's application for writ of habeas corpus. *See Ex parte Washington*, 168 S.W.3d 227, 238–39 (Tex. App.—Fort Worth 2005, no pet.) (concluding that prosecution did not intentionally provoke mistrial so as to bar retrial when defense-requested mistrial was prompted by nonresponsive answers of prosecution's witnesses and prosecution had instructed witnesses not to gratuitously mention impermissible evidence); *see also Razo v. State*, No. 02–11–00161–CR, 2012 WL 3207271, at *4 (Tex. App.—Fort Worth Aug. 9, 2012, no pet.) (mem. op., not designated for publication) (holding that evidence supported that prosecutor did not intentionally provoke witness into making four references of extraneous acts where prosecutor had instructed witness not to testify to extraneous acts and prosecutor attempted to persuade trial court that mistrial was not necessary). We affirm the trial court's order denying habeas corpus relief.

## IV. CONCLUSION

Having determined that the trial court did not abuse its discretion by denying Chavez's application for writ of habeas corpus, we affirm the trial court's order denying habeas corpus relief.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 6, 2014

8